**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Odece Dempsean Hill,<br><br>　　　　　Petitioner,<br><br>v.<br><br>Charles L Ryan, et al.,<br><br>　　　　　Respondents. | No. CV-19-04836-PHX-DWL<br><br>**ORDER** |

On July 26, 2019, Petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.) Petitioner thereafter filed an amended petition (Doc. 5) and a second amended petition (Doc. 21). On July 31, 2020, Magistrate Judge Bibles issued a Report and Recommendation ("R&R") concluding the petitions should be denied. (Doc. 27.) Afterward, Petitioner filed objections to the R&R (Doc. 30) and Respondents filed a response (Doc. 31). For the following reasons, the Court will overrule Petitioner's objections, adopt the R&R, and terminate this action.

I.　Background

*The Underlying Crime*. In May 2001, three armed men forced their way into an apartment in Mesa, Arizona. (Doc. 27 at 1-2.) The apartment was occupied by four people. (*Id.*) Upon entry, the intruders held two of the occupants at gunpoint and beat them with firearms. (*Id.*) The other two occupants—a pregnant teenage girl and her boyfriend—attempted to hide in a closet. (*Id.*) When the intruders found the couple, they threatened to shoot the teenager in the stomach and then sexually assaulted her. (*Id.*) After the

intruders left, the teenager was found "naked in the bathtub in a fetal position, shaking and crying." (*Id.*)

Shortly thereafter, the teenager went into premature labor and was taken to the emergency room. (*Id.*) "There a registered nurse trained to perform forensic medical examinations examined her. The nurse provided medical care and also collected samples of biological evidence using a rape kit." (*Id.*)

In 2005, one of the assailants, Russell, was identified as a suspect based on a match of his DNA to DNA found on the victim. (*Id.* at 4.)

In 2008, Russell was questioned by a police detective concerning the crime. (*Id.* at 4-5.) During this questioning, Russell implicated Petitioner. (*Id.*) Later, during another interview, Russell again implicated Petitioner. (*Id.* at 5.)

In 2011, Petitioner "was identified as a suspect based on a match of his DNA to DNA found . . . on the mattress in the bedroom where one of the sexual assaults occurred." (*Id.* at 4.)

*The Charges, Trial, And Sentencing*. In August 2011, Petitioner was charged with one count of burglary, four counts of kidnapping, four counts of aggravated assault, seven counts of sexual assault, and one count of attempted sexual assault. (*Id.* at 1.)

Before trial, the victim died from causes unrelated to the assault. (*Id.* at 2.) Over Petitioner's objection, the trial court allowed the nurse to testify about a statement made by the victim at the outset of the examination. (*Id.*) In this statement, "the victim provided a graphic account of several assaults." (*Id.* at 3-4.)

Petitioner testified in his own defense in an attempt to explain how his DNA could have been found at the crime scene. (*Id.* at 4.) Specifically, Petitioner testified that "he had engaged in sexual activity at the crime scene with [Russell] while the two were there to purchase drugs on the day of the charged crimes." (*Id.*)

The state called Russell as a witness in an attempt to contradict Petitioner's testimony. (*Id.*) Russell had pleaded guilty to participating in the crime and received a sentence of 35 years' imprisonment. (*Id.* at 5 n.1.) Russell denied that he and Petitioner

had engaged in sexual activity at the apartment. (*Id.* at 4.) Russell also made an array of inconsistent statements about other topics. (*Id.* at 4-5.)

The jury deliberated for only six hours before finding Petitioner guilty on all counts. (*Id*. at 4.) At sentencing, Petitioner was sentenced to consecutive and concurrent sentences of imprisonment totaling 91.5 years. (*Id.* at 5.)

*The Direct Appeal*. In his direct appeal, Petitioner argued that his Sixth Amendment confrontation rights had been violated by the admission of the nurse's testimony concerning the victim's statements. The Arizona Court of Appeals rejected this argument and affirmed. *State v. Hill*, 336 P.3d 1283, 1290 (Ariz. Ct. App. 2014) ("Because the victim's statement to the forensic nurse was not testimonial, [Petitioner's] rights under the Confrontation Clause were not violated when the superior court allowed the nurse to recount the statement."). The Arizona Supreme Court denied Petitioner's petition for review. (Doc. 27 at 5.)

*PCR Proceedings*. Petitioner "sought a state writ of habeas corpus pursuant to Rule 32 of the Arizona Rules of Criminal Procedure." (*Id.* at 6.) Specifically, Petitioner argued that (1) his counsel was ineffective for failing to "challenge the indictment" and for failing to "impeach witness[es] and object to false testimony"; and (2) the state violated his due process rights by presenting perjury and false testimony. (*Id.*)

The trial court summarily concluded that Petitioner had failed to raise any colorable claim for relief. (*Id.*) In January 2018, the Arizona Court of Appeals granted review and summarily denied relief. (*Id.*)

*The Habeas Claims*. In his petitions, Petitioner raises four grounds for relief:

(1) "He was denied his right to confront witnesses."

(2) "He was denied his right to the effective assistance of counsel because counsel failed to" (a) "challenge the grand jury proceedings by filing a motion for redetermination of probable cause"; (b) "impeach the State's witness [Detective Beck] at trial with prior false testimony or perjury before the grand jury;" (c) "object to false testimony at trial"; and (d) "raise

|   |   |   |
|---|---|---|
| | | prosecutorial misconduct." |
| | (3) | "The prosecutor committed misconduct . . . by failing to notify the grand jury and the trial court of false testimony or perjury and allowed it to go uncorrected at trial . . . and because the state also became an unsworn witness at trial during the examination of defendant." |
| | (4) | "He was denied the effective assistance of counsel because counsel failed to request jury instructions and verdict forms for the lesser or necessarily included offenses of sexual abuse . . . and an attempt." |

(Doc. 27 at 6-7, citations and internal quotation marks omitted.)

*The R&R*. The R&R concludes the petitions should be denied. As for Petitioner's first claim (Confrontation Clause), the R&R concludes that "[t]he state court's denial of relief on this claim was not contrary to nor an unreasonable application of federal law" because the Supreme Court has recognized that the Confrontation Clause "does not admission of non-testimonial hearsay statements" and the statements at issue here were non-testimonial because "they were made to a nurse for the purpose of treatment." (*Id.* at 11-14.)

As for Petitioner's second claim (ineffective assistance), the R&R concludes it should be denied because, even assuming Petitioner preserved his various theories during the state-court proceedings, he cannot establish deficient performance or prejudice. (*Id.* at 14-16.) Specifically, as for deficient performance, the R&R states that "[a]n independent review of the entire record in this matter, including the complete trial transcripts and the pre-trial proceedings, and the briefs on appeal and in the state habeas action, indicates a reasonable basis for the state court's denial of [Petitioner's] *Strickland* claims. Counsel was thoroughly familiar with the facts of this case and the discovery provided by the State. The record indicates counsel ably and thoroughly cross-examined the State's witnesses and presented [Petitioner's] testimony and theory of the case. Counsel raised numerous objections and brought several motions, including moving for a mistrial and a to dismiss for want of adequate evidence." (*Id.* at 14-16.) As for prejudice, the R&R states that

"[g]iven the weight of the evidence against [Petitioner], including the DNA evidence placing him at the scene of the crime, the implausibility of his explanation for the presence of his DNA at the crime scene, and Mr. Russell's repeated pre-trial statements to law enforcement regarding [Petitioner's] participation in the crime, the state court could reasonably find that, even if counsel's performance was unreasonably deficient, [Petitioner]was not prejudiced by any errors." (*Id.*)

As for Petitioner's third claim (prosecutorial misconduct), the R&R concludes that "[a] review of the entire record in this matter, including the trial transcripts and the pleadings in [Petitioner's] appeal and post-conviction proceedings, demonstrates the allegedly improper statements and questions cited by [Petitioner] had an insignificant effect on the jury's finding that [Petitioner] committed the crimes of conviction and, accordingly, the state courts' denial of relief was not an unreasonable application of or clearly contrary to federal law. . . . The challenged statements by the prosecutor in this matter, with regard to the nature of the crimes and the harm to the victim, and in challenging [Petitioner's] credibility, did not manipulate nor misstate the evidence and fall short of the established standard for prosecutorial misconduct." (*Id.* at 16-20.)

Finally, as for Petitioner's fourth claim (ineffective assistance of counsel with respect to jury instructions and verdict form), the R&R concludes that (1) this claim is procedurally defaulted because Petitioner did not properly raise it during the state-court proceedings; and (2) alternatively, this claim fails on the merits because "[Petitioner] bears the burden of demonstrating that his attorney's decision not to request the instruction was not a 'reasonable strategic decision' and he fails to meet this burden." (*Id.* at 20-22, citation and internal quotation marks omitted.)

II.     <u>Legal Standard</u>

A party may file written objections to an R&R within fourteen days of being served with a copy of it. Rules Governing Section 2254 Cases 8(b) ("Section 2254 Rules"). Those objections must be "specific." *See* Fed. R. Civ. P. 72(b)(2) ("Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific

written objections to the proposed findings and recommendations.").

District courts are not required to review any portion of an R&R to which no specific objection has been made. *See, e.g., Thomas v. Arn*, 474 U.S. 140, 149-50 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) ("[T]he district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise."). Thus, district judges need not review an objection to an R&R that is general and non-specific. *See, e.g., Warling v. Ryan*, 2013 WL 5276367, *2 (D. Ariz. 2013) ("Because de novo review of an entire R & R would defeat the efficiencies intended by Congress, a general objection 'has the same effect as would a failure to object.'") (citations omitted); *Haley v. Stewart*, 2006 WL 1980649, *2 (D. Ariz. 2006) ("[G]eneral objections to an R & R are tantamount to no objection at all.").[1]

III. Analysis

Petitioner objects to the R&R's rejection of all four of his claims. (Doc. 30.) As for his first claim (Confrontation Clause), Petitioner contends that the victim's statements to the nurse were testimonial because the nurse "only sees people who have been the victim of a crime," "no treatment was given in response to the declarant's statements," and the victim provided "authorization at the outset of the encounter [to] release the complete report to law enforcement." (*Id.* at 2-3.) Petitioner then cites a series of decisions by state courts, and one decision by a military court, in which the courts purportedly "concluded that admission of statements made during such an interview violates the Confrontation Clause." (*Id.* at 3-4.)

This objection lacks merit. In *Dorsey v. Cook*, 677 Fed. App'x 265 (6th Cir. 2017), the habeas petitioner argued that his Confrontation Clause rights were violated during his

---

[1] *See generally* S. Gensler, 2 Federal Rules of Civil Procedure, Rules and Commentary, Rule 72, at 422 (2018) ("A party who wishes to object to a magistrate judge's ruling must make specific and direct objections. General objections that do not direct the district court to the issues in controversy are not sufficient. . . . [T]he objecting party must specifically identify each issue for which he seeks district court review . . . .").

state-court prosecution by the admission of testimony from a sexual assault nurse examiner because, *inter alia*, "the victim signed a consent form that authorized her to provide information to law enforcement for purposes of criminal investigation and prosecution." *Id.* at 266. The Sixth Circuit rejected this claim, holding that "the state appellate court's denial of Dorsey's confrontation claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent" because "[t]he Supreme Court has not addressed whether a statement is testimonial when it is made for the dual purpose of obtaining medical care and providing evidence for later criminal prosecution" and "[n]othing in *Crawford* or subsequent Supreme Court cases interpreting the meaning of 'testimonial' . . . compels the conclusion that statements made to a sexual assault nurse examiner for both medical and legal purposes are testimonial. Because there could be fair-minded disagreement about whether such statements are testimonial, we cannot grant Dorsey habeas relief." *Id.* at 267.

This reasoning applies with equal force here. The Arizona Court of Appeals conducted, after conducting a fact-intensive analysis of the circumstances surrounding the victim's interaction with the nurse, that the challenged statements were not testimonial. No Supreme Court decision clearly establishes that this fact-intensive analysis was incorrect. *See also Reel v. Cain*, 2017 WL 5001424, *20 (E.D. La. 2017) ("[T]he Supreme Court has not yet addressed whether a statement made to a medical professional for dual purposes of obtaining medical care and providing evidence for a later criminal prosecution is testimonial. Given the absence of clearly established federal precedent on the Confrontation Clause's application to statements made for both medical and legal purposes, the state court did not contravene, or unreasonably apply, clearly established Supreme Court jurisprudence in denying petitioner's claim.").

Petitioner next objects to the rejection of his ineffective assistance claim. (Doc. 30 at 4-5.) With respect to "the grand jury proceedings," Petitioner argues that if his "counsel was thoroughly familiar with the facts of the case, there is no way he would've overlook[ed] violations of 18 U.S.C. § 1622 and 1623 by the state and Det. Beck during

the grand jury proceedings." (*Id.*)  With respect to counsel's performance during trial, Petitioner argues that "counsel's failure to impeach Det. Beck regarding his perjury before the grand jury and at trial . . . forced the jury to accept the state's credibility."  Finally, Petitioner argues these errors "precluded [him] from raising it post conviction." (*Id.*)

These arguments are unavailing.  Putting aside the fact that Petitioner's claims of deficient performance are conclusory and fail to identify any specific flaw in the R&R's detailed analysis of that issue, Petitioner does not address—much less dispute—the R&R's alternative determination that he cannot demonstrate prejudice in light of "the weight of the evidence against [Petitioner], including the DNA evidence placing him at the scene of the crime, the implausibility of his explanation for the presence of his DNA at the crime scene, and Mr. Russell's repeated pre-trial statements to law enforcement regarding [Petitioner's] participation in the crime." (Doc. 27 at 14-16.)  In any event, the Court has carefully reviewed the R&R's analysis of the ineffective assistance claim and adopts it in all respects.

Petitioner next objects to the rejection of his prosecutorial misconduct claim. (Doc. 30 at 6-7.)  He contends that the state violated "18 U.S.C. § 1622 and 1623 and fail[ed] to notify the grand jury and judge of perjury in accordance with established procedure" and that the state acted as "an unsworn witness" at trial because the challenged statements were not "supported by the evidence" and were "inflammatory." (*Id.*)

This objection fails for the same reasons as the previous one.  Not only are Petitioner's arguments conclusory, but he fails to challenge the R&R's determination that any error was harmless in light of the weight of the evidence.

Last, Petitioner objects to the rejection of his fourth claim, which was predicated on trial counsel's ineffective assistance with respect to the jury instructions and verdict form. Doc. 30 at 7.)  Petitioner argues this claim shouldn't be deemed procedurally defaulted because the default was due to the "ineffective assistance of PCR counsel." (*Id.*)

This argument lacks merit.  The R&R concluded that, even if this ineffective assistance claim weren't procedurally defaulted, it would fail on the merits. (Doc. 27 at

20-22.) Petitioner does not address, much less challenge, this portion of the R&R's analysis.

Accordingly, **IT IS ORDERED** that:

(1) Petitioner's objections to the R&R (Doc. 30) are **overruled**.

(2) The R&R's recommended disposition (Doc. 27) is **accepted**.

(3) The habeas petitions (Docs. 1, 5, 21) are **denied**.

(4) A Certificate of Appealability and leave to proceed *in forma pauperis* on appeal are **denied** because Petitioner has not made a substantial showing of the denial of a constitutional right.

(5) The Clerk shall enter judgment accordingly and terminate this action.

Dated this 6th day of November, 2020.

Dominic W. Lanza
United States District Judge